## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **FORTUNE PRODUCTS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 1:14-CV-00803** |
| **V.** | § | |
| | § | |
| **SMITH'S CONSUMER PRODUCTS, INC.,** | § | |
| **d/b/a SMITH ABRASIVES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

### <u>ORIGINAL COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff **Fortune Products, Inc.** ("Plaintiff" or "Fortune") files this Original Complaint

against Defendant **Smith's Consumer Products, Inc.**, d/b/a **Smith Abrasives, Inc.**

("Defendant" or "Smith"). For causes of action against Defendant, Plaintiff alleges as follows:

### INTRODUCTION

1.      This is a civil action at law and in equity for declaratory judgment of

non-infringement under the Patent Act and violations of the Sherman Act under the Supreme

Court's decision in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382

U.S. 172 (1965) against Smith. Smith is a direct competitor of Fortune in the knife and tool

sharpener market.  Prior correspondence from Smith and its attorneys, in conjunction with recent

litigation between the parties, raises a reasonable apprehension of a lawsuit by Smith against

Fortune for patent infringement of its products the 4-in-1 Sharpener ("4-in-1 Sharpener") and the

AccuSharp Diamond Rod Sharpener (the "Fortune Rod Sharpener").  In addition, Smith's

aggressive threats of litigation and active attempts at litigating U.S. Patent No. 7,553,220 (the "'220 Patent"), despite undisclosed prior art and prior use of the patent prior to its filing, have produced an anti-competitive injury in the marketplace, resulting in direct injury to Fortune.

2.      Fortune seeks a declaration that Fortune's products do not infringe the purported patents of Smith; a declaration of invalidity for some or all of Smith's purported patents; and a finding that Smith has violated Federal antitrust laws by knowingly and intentionally seeking to restrict competition in the relevant market by enforcing a patent procured through fraud.  For these violations, Fortune seeks to recover statutory treble damages, costs, attorney's fees, and interest in conjunction with any further relief as this Court deems just or equitable under the circumstances.

## PARTIES

3.      Fortune is a corporation organized under the laws of the State of Texas, with its principal place of business at 2010A Windy Terrace, Cedar Park, Texas 78613.

4.      Upon information and belief, Smith is a corporation organized under the laws of the State of Delaware, with its principle place of business at 747 Mid-America Boulevard, Hot Springs, Arkansas 71913. Upon information and belief, Smith is regularly transacting business in the State of Texas and in this Judicial District.

## JURISDICTION

5.      This civil action arises under the Constitution and laws of the United States, in particular: the Patent Act, Title 35 of the United States Code; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; Section 2 of the Sherman Act, 15 U.S.C. § 2; and Section 4 of the Clayton Act, 15 U.S.C. § 15.  As such, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Upon information and belief, Smith is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Smith's continuous and systematic contacts with the State of Texas and this Judicial District and Smith's substantial business in this forum, including: (i) active enforcement of its patents in the State of Texas; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this Judicial District. In addition, this complaint arises out of purposeful acts committed by Smith in this Judicial District.

## VENUE

7.      Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b). Upon information and belief, Smith has transacted business in this District, and has attempted to enforce its patents in this Judicial District. In addition, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.

## FACTS

**A.      Fortune Products, Inc.**

8.      Founded in 1984, Fortune is a pioneer in the manual knife and tool sharpening market with the use of fixed tungsten carbide sharpening blades in a draw-type sharpener. Following the success of its draw-type sharpener, Fortune began manufacturing and sourcing various knife and tool sharpening products, including whet stones, rod sharpeners, hook and broad-head sharpeners, and numerous other products in the United States and around the world.

9.      The Fortune 4-in-1 Sharpener is a multi-function pocket-sized knife and tool sharpener featuring tungsten and ceramic sharpening elements in the handle along with a folding diamond tapered rod and flat diamond sharpening file.  **Exhibit A**.

3

10.     The Fortune Rod Sharpener is a pen-type retractable diamond-coated steel rod with a storage handle, and is used to sharpen an assortment of knife and tool edges.  **Exhibit B**.

11.     Fortune began selling the 4-in-1 Sharpener and the Fortune Rod Sharpener in 2013 in the United States and throughout the world, and continues to date.

12.     Fortune's current President is Gerald R. "Jay" Cavanaugh, Jr. (hereinafter "Mr. Cavanaugh").

13.     Fortune is a direct competitor of Smith in the knife and tool sharpener market.

**B.     Smith Abrasives, Inc.**

14.     Upon information and belief, Smith is a knife and tool sharpening products manufacturer based in Arkansas.

15.     Smith has been in business over 125 years and claims to be "a market leader in the design and manufacture" of knife sharpeners in the U.S.  **Exhibit C**.

16.     Upon information and belief, Smith sells its products throughout the United States and worldwide, including sales of products in Texas and in this Judicial District.

17.     Upon information and belief, Defendant's current President is Richard S. Smith (hereinafter "Mr. Smith").

18.     Upon information and belief, Mr. Smith is the alleged inventor of U.S. Patent No. 8,221,199 (the "'199 Patent") on an "Abrasive sharpener," filed on December 26, 2007, and issued on July 17, 2012. **Exhibit D**.

19.     Upon information and belief, Defendant is the owner, and at all times material hereto has been the owner, of all right, title, and interest in and to the '199 Patent.

20.     Upon information and belief, Mr. Smith is the alleged inventor of U.S. Patent No. 7,553,220 (the "'220 Patent") on a "Retractable Abrasive Sharpener and Carrying Case," filed on October 11, 2007, and issued on June 30, 2009. **Exhibit E**.

21.     Upon information and belief, Defendant is the owner, and at all times material hereto has been the owner, of all right, title, and interest in and to the '220 Patent.

22.     Smith is a direct competitor of Fortune in the knife and tool sharpener market.

**C.     Fortune's Notice of U.S. Patent No. 8,221,199**

23.     During the week of January 14, 2013, Fortune attended and hosted a booth at the Shooting, Hunting, Outdoor Trade Show ("SHOT Show") in Las Vegas.

24.     During the SHOT Show, Mr. Smith approached Mr. Cavanaugh at Fortune's exhibition booth and raised complaints regarding the Fortune 4-in-1 Sharpener.

25.     On January 24, 2013, Mr. Smith sent a letter on Smith letterhead addressed to Mr. Cavanaugh and delivered to Fortune's office located in this Judicial District, referencing the SHOT Show and the Fortune 4-in-1 Sharpener, and informing Mr. Cavanaugh of the '199 Patent. In his letter, Mr. Smith informed Mr. Cavanaugh that the Smith "Pocket Pal" product which is allegedly covered by the '199 Patent had been on sale for five years at the time of the letter. **Exhibit F**.

26.     On September 6, 2013, Smith's patent attorney Edward D. Gilhooly ("Mr. Gilhooly") sent a letter to Fortune, delivered to Fortune's office in this Judicial District, and referencing the Fortune 4-in-1 Sharpener.  This letter identifies the Smith '199 Patent and introduces Smith's U.S. Patent No. 8,512,105 (the "'105 Patent") issued on August 20, 2013. **Exhibit G**.

**D.      Infringement Allegations by Smith**

27.      On October 4, 2013, Mr. Gilhooly sent a letter to Fortune, delivered to Fortune's office in this Judicial District, alleging infringement of the '199 and '105 Patents by the Fortune 4-in-1 Sharpener.  **Exhibit H**.

28.      In November of 2013, Mr. Smith made several phone calls to Mr.  Cavanaugh, at Fortune's office in this Judicial District, which resulted in one conversation between the two individuals.  During this conversation, Mr. Smith disclosed that the "dots" present in the '105 Patent were the only issue with the Fortune 4-in-1 Sharpener.  No mention of the '220 Patent or the Fortune Diamond Rod product was ever made by Mr. Smith.

29.      The parties participated in settlement discussions regarding the '199 and '105 Patents from December 2013 until February 2014.

**E.      Fortune's Notice of U.S. Patent No. 7,553,220**

30.      On February 19, 2014, Smith's attorney sent a letter to Fortune's attorneys notifying Fortune of a lawsuit filed one day earlier in the United States District Court for the Northern District of Texas, Dallas Division, and attached a copy of the complaint which was not immediately served on Fortune ("Smith's Original Complaint").  **Exhibit I**. In Smith's Original Complaint, Smith did not include any allegations regarding the '199 Patent, including any of Smith's prior allegations of infringement by Fortune of the '199 Patent, which have never been resolved. Rather, among other newly alleged copyright and trade dress claims, Smith's Original Complaint alleged Fortune's infringement of the '105 Patent and included a new and additional allegation of infringement of the '220 Patent.  Not once in the extensive exchange of correspondence between Fortune and Smith in advance of Smith filing Smith's Original

6

Complaint, did Smith previously disclose the '220 Patent or make any allegations of infringement of the '220 Patent by Fortune.

31.     The parties continued settlement negotiations regarding the claims alleged in Smith's Original Complaint, but reached an impasse in April 2014.  Smith then served Smith's Original Complaint on Fortune's present litigation counsel, in this Judicial District, and proceeded with litigation in the Northern District of Texas, Dallas Division (Civil Action No. 3:14-CV-00627-K) (the "Pending Litigation").

32.     Fortune does not believe that venue of the Pending Litigation is proper in the Northern District of Texas. Accordingly, Fortune filed, in the Pending Litigation, a Motion to Dismiss for Improper Venue, pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, and 28 U.S.C. § 1406(a) or, in the Alternative, Motion to Transfer Venue to the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1404(a) ("Fortune's Venue Motions").  Fortune filed its Venue Motions in lieu of an answer, pursuant to Fed. R. Civ. P. Rule 12(b)(3). Fortune's Venue Motions are currently pending before the Northern District of Texas. Accordingly, Fortune has not yet filed an answer, counterclaims or other responsive pleadings in the Pending Litigation.

**F.    Smith's Fraud on the United States Patent and Trademark Office**

33.     A valid U.S. patent grants the owner the right to exclude others from making, using, selling or importing the invention defined in the patent claims.  A patent is valid, however, only if the claimed invention is new and nonobvious.

34.     On October 11, 2007, Mr. Smith applied for a patent on a "Retractable Abrasive Sharpener and Carrying Case".  This application was assigned from Mr. Smith to Smith and has matured into the present '220 Patent, which issued on June 30, 2009. In order to assist the United

States Patent and Trademark Office ("USPTO") in its mission to only issue valid patents,

individuals associated with a patent application have a duty of candor and good faith in dealing

with the USPTO, including a duty to disclose all information known to be material to

patentability.  Mr. Smith acknowledged the duty to disclose and signed a sworn oath on January

15, 2005 in the application for the '220 patent.  **Exhibit J**.

**G.**     **Smith Withdraws its '220 Patent Claims from the Pending Litigation**

35.     Pursuant to the local rules of the United States District Court for the Northern

District of Texas, specifically Miscellaneous Order No. 62 Paragraphs 3-3 and 3-4, Fortune

began preparing its Preliminary Invalidity Contentions in advance of its Answer in the Pending

Litigation.  The Preliminary Invalidity Contentions require disclosure of prior art which, in the

estimation of the defendant, anticipates or renders the patents identified in the Complaint,

including the '220 Patent, invalid.

36.     In the course of preparing its Preliminary Invalidity Contentions, Fortune

researched rod sharpener prior art and encountered a column located on Page 90 of the July 1998

issue of Blade Magazine with the headline, "Smith Unveils Steel and Diamond Rod" (the

"Publication").  The Publication includes indications of multiple features described in the '220

Patent, including: a "pocket-size, retractable, diamond-coated" sharpener; a flat surface

extending along the rod's longitudinal axis; and a carrying case including a locking mechanism

for the rod. **Exhibit K**.

37.     Under the applicable patent law, during the examination of the '220 patent, an

applicant's duty is to disclose information which "(a) establishes, by itself or in combination with

other information, a prima facie case of unpatentability of a claim; or (b) refutes, or is

inconsistent with, a position the applicant takes in: (i) opposing an argument of unpatentability

relied on by the USPTO, or (ii) asserting an argument of patentability." M.P.E.P. § 1.56(b) (2000). "A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable . . ." *Id*. The statutory bar of Section 102 of the Patent Act presents a prima facie case of unpatentability for those applications filed before September 16, 2012, for which the patent's subject matter "is described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b) (2000). As such, the Publication is material to patentability and should have been disclosed during the examination of the application for the '220 patent.

38.     No mention of the Publication was included in the required disclosures for the '220 Patent. No mention of the public sales by Smith in 1998 was included in the disclosures for the '220 patent. *See* **Exhibit E**. As such, Smith obtained the '220 patent by fraud by signing a false Oath on January 1, 2005, failing to disclose the Publication, which also would have barred the '220 patent under 35 U.S.C. § 102(b), and/or failing to disclose the public sales of Smith's own products, which also would have barred the '220 patent under 35 U.S.C. § 102(b).

39.     On June 30, 2014, and in advance of the deadline for filing Fortune's Preliminary Invalidity Contentions in the Pending Litigation, Fortune's attorneys notified Smith of the Publication.

40.     On July 8, 2014, in response to Fortune's notification of the Publication, Smith filed Smith's Unopposed Motion for Leave to File an Amended Complaint and Dismiss Smith's '220 Patent Infringement Claim With Prejudice in the Pending Litigation. In Smith's Motion, Smith did not acknowledge the invalidity of the '220 Patent or of Smith's '220 Patent infringement claim. Rather, Smith alleged "While Smith believes it has a valid claim of patent

9

infringement related to the Patent No. '220, it is removing this claim to avoid costly litigation, narrow the issues for discovery, and hopefully aid in the parties' settlement negotiations."

41.     On July 10, 2014, the Court granted Smith's Motion. On the same day, Smith filed its First Amended Complaint, thereby removing all allegations regarding the '220 Patent and Smith's '200 Patent infringement claim from Smith's Original Complaint in the Pending Litigation. Accordingly, neither the '199 Patent nor the '220 Patent are subjects before the Court in the Pending Litigation and none of the existing controversies between the parties hereto regarding the '199 Patent and the '220 Patent will be resolved in the Pending Litigation.

**H.     Smith's Anti-competitive Conduct**

42.     The '220 Patent confers on Smith monopoly power in the relevant market.  The relevant market in this case is restricted to a hand held abrasive sharpener comprising a rod extending along a longitudinal axis, said first end section having a tapered, generally conical configuration; an opposite end section extending from said first end section along said longitudinal axis, said opposite end section having at least a partially cylindrical configuration, said flat surface extending along said longitudinal axis, said first end section and said opposite end section respectively having abrasive surfaces on said tapered configuration, said cylindrical configuration, and said flat configuration for sharpening edges; a carrying case for carrying said rod in a secured or release position, said carrying case having a locking mechanism means for releasably securing said rod to said carrying case for transport at a partially projected position within said carrying case with said first end section or said opposite end section projecting solely from said carrying case with said opposite end section or said first end section being positioned within said carrying case, and said rod having a cylindrical portion positioned generally intermediate of said rod between said first end section and said opposite end section along said

longitudinal axis, said cylindrical portion contacting said locking means in said secured position (the "Relevant Market").

43.     The characteristics of the products in the Relevant Market are such that consumers are unable and unlikely to switch to a substitute product.  For instance, goods in the Relevant Market include a pen-type reversible sharpening rod having a tapered and cone-shaped end and a semi-round flat-shaped end, allowing consumers to sharpen both straight and serrated edges with the same device that can be conveniently stowed in a shirt pocket. Without both, a consumer would need to purchase a more expensive product, or purchase separate products for each individual function.

44.     The geographic region for the Relevant Market is the United States.

45.     Within the Relevant Market, with Smith as the owner of the '220 Patent, there are no non-infringing goods due to Smith's power to exclude all competition, which Smith has actively pursued since the issuance of the '220 Patent.

46.     Since the issuance date of the '220 Patent, Smith has maintained its market share of the Relevant Market by threatening enforcement of the fraudulently obtained '220 Patent.

47.     Upon information and belief, Smith has widely publicized the existence of the '220 Patent to the knife and tool sharpener industry in general, and directed communications to specific industry participants indicating that Smith would act aggressively to challenge products sourced or manufactured that it saw as potentially infringing the '220 Patent.

48.     Buck Knives, Inc., sells the Buck Diamond Pocket Sharpener (Manufacturer #97070), a competitive product in the Relevant Market.  **Exhibit L**.

49.     Upon information and belief, Buck Knives, Inc. sells the Buck Diamond Pocket Sharpener under an agreement between itself and Smith.

11

50.     Smith has also maintained its monopoly power and market share in the Relevant Market by asserting in publications through its product packaging that it has patented its products, including listing the '220 Patent on the packaging for the Smith's Diamond Rod Sharpener.  **Exhibit M**.

51.     Smith's enforcement of the fraudulent '220 Patent in the United States has the anti-competitive effect of limiting the extent to which competitors in the Relevant Market can source components for competitive products.

52.     Upon information and belief, in at least one instance, manufacturers in the United States have refused to produce goods for competitors of Smith which incorporate elements of the '220 Patent, including the semi-round flat-shaped sharpening rod, due to threats of enforcement made by Smith.

53.     Upon information and belief, competitors of Smith, have been forced to pay higher prices for sourcing materials due to manufacturers refusing to expose themselves to a potential patent infringement lawsuit based on the '220 Patent.

54.     Upon information and belief, competitors of Smith, have had to switch manufacturers of source materials resulting in a higher price per unit due to the '220 Patent's restrictions on the Relevant Market.

55.     Beyond the broader anti-competitive effects of Smith's conduct with relation to broader competition in the Relevant Market, Fortune is directly injured by Smith's conduct.

56.     Fortune's sales of the Fortune Rod Sharpener prior to the initiation of litigation based on the '220 Patent by Smith, amounted to 11,764 units.  These units competed with Smith's own products in the Relevant Market.

57.     Following the filing of Smith's original Complaint alleging infringement of the '220 Patent by Fortune, Fortune was forced to redesign and/or replace elements of the Fortune Rod Sharpener characteristic of products in the Relevant Market.  Fortune's costs of producing these new non-competitive units increased by $.45 per unit produced.  In addition, sales of the redesign units decreased by over 50% over a substantially similar time period, indicating that they are not a substitute for products sold in the Relevant Market.

58.     Smith's market share is significantly larger than that of Fortune's and Smith claims to be a market leader in the U.S. knife and tool sharpener market.  *See* **Exhibit C**.

59.     Upon information and belief, and according to public statements made by Mr. Smith, Smith sells more consumer knife and tool sharpening products than any other company in the world.  The products are sold in 41 countries, including the United States.

60.     Fortune was required to hire counsel and bring the instant action in order to obtain redress from Smith's unlawful and anticompetitive conduct cited herein.

## COUNT ONE:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 8,221,199 AND 7,553,220

61.     Fortune repeats the allegations set forth in paragraphs 1-60 and incorporates them herein by reference.

62.     Smith's conduct in forwarding the letters and correspondence dated October 4 and December 6, 2013, and January 2, 2014, alleging infringement of the '199 Patent and demanding payment for Fortune's manufacture and sale of the 4-in-1 Sharpener product has created a reasonable apprehension that, although the '199 Patent was not included in Smith suit against Fortune in the Northern District of Texas, Fortune will be subjected to a lawsuit based upon patent infringement if it continues to manufacture, sell and/or promote the 4-in-1 Sharpener.

63.     Moreover, Smith's amended complaint and removal of its claim of infringement of the '220 Patent, while Smith continues to allege that "it has a valid claim of patent infringement related to the Patent No. '220," only resolved the specific claims that had been alleged by Smith against Fortune in the Pending Litigation. To date, Smith has failed and refused, and continues to fail and refuse, to acknowledge the invalidity or unenforceability of the '220 Patent. Through the correspondence identified herein and its actions in pursuit of litigation, Smith has created a reasonable apprehension that the Fortune Rod Sharpener and/or other products manufactured or sold by Fortune are likely to be subject again to a lawsuit based upon patent infringement if Fortune continues to manufacture and sell the Fortune Rod Sharpener or similar products.

64.     As a result of Smith's false and reckless allegations of patent infringement, and its threat to pursue, and in the case of the '220 Patent actual attempt to pursue, legal action against Fortune, an actual controversy exists between the parties hereto regarding Fortune's right to continue selling its 4-in-1 Sharpener and Fortune Rod Sharpener products and/or to sell similar competing products now or in the future.

65.     The making, using, or selling of Fortune's 4-in-1 Sharpener and Fortune Rod Sharpener products does not infringe the '199 Patent or the '220 Patent.

66.     For these reasons, Fortune is entitled to a judgment declaring that Fortune's 4-in-1 Sharpener and Fortune's Rod Sharpener products do not infringe the '199 Patent or the '220 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

## COUNT TWO:  DECLARATORY JUDGMENT OF PATENT INVALIDITY
## FOR U.S. PATENT NO. 7,553,220

67.     Fortune repeats the allegations set forth in paragraphs 1-66 and incorporates them herein by reference.

68.     35 U.S.C. § 102(b) provides: A person shall be entitled to a patent unless - (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

69.     Smith's '220 Patent "Retractable Abrasive Sharpener and Carrying Case" was filed on October 11, 2007, and issued on June 30, 2009.

70.     By virtue of the conduct described above, the application which resulted in the grant of the '220 Patent was filed in contravention of 35 U.S.C. § 102(b) because it was filed more than one year after the invention was described in a printed publication or in public use or on sale in this country.

71.     Smith's suit for infringement based on the '220 Patent, and subsequent amendment of its Original Complaint removing infringement claims based on the '220 Patent, while Smith continues to allege that "it has a valid claim of patent infringement related to the Patent No. '220," creates a reasonable apprehension that Fortune's Diamond Rod Sharpener and similar products are likely to be subject again to a lawsuit based on claims of infringement of '220 Patent.

72.     For these reasons, Fortune is entitled to a judgment declaring that the '220 Patent is invalid under one or more of the provisions of 35 U.S.C. §§ 102, 103 or 112.

15

## COUNT THREE:  VIOLATION OF THE SHERMAN ACT

73.     Fortune repeats the allegations set forth in paragraphs 1-72 and incorporates them herein by reference.

74.     By virtue of the conduct described above, Smith has willfully acquired and exercised monopoly power in the Relevant Market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Section 4 of the Clayton Act, 15 U.S.C. § 15(a), authorizes private suits for damages based on violations of the Sherman Act.

75.     Under the legal principals set out in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965), Smith has violated Section 2 of the Sherman Act by intentionally obtaining and maintaining monopoly power in the Relevant Market through threats and active litigation based on a patent Smith knew was obtained by fraud, resulting in a virtually complete absence of competition in the Relevant Market.

76.     Failure to disclose the Publication during the prosecution of the '220 Patent constitutes a knowing and willful fraud on the USPTO.  The Publication was material and would have resulted in a final rejection of the application as it forms the basis for a prima facie case of unpatentability under the statutory bar for prior publication under Section 102(b) of the Patent Act, 35 U.S.C. § 102(b) (2000).

77.     Smith's false statement that the invention had not been described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention during the prosecution of the '220 Patent constitutes a knowing and willful fraud on the USPTO.  This false statement was material and would have resulted in a final rejection of the application.  The concealment of sales information is

16

particularly egregious because, unlike Smith's failure to disclose the Publication, the examiner has no way of securing the information on his or her own.

78.     The '220 Patent confers on Smith monopoly power in the Relevant Market.  Due to Smith's monopoly power to exclude all competition within the Relevant Market and Smith's active application of said monopoly power to restrict competition within that market, no non-infringing substitutes exist.

79.     Presently, Smith's fraudulently obtained '220 Patent impairs Smith's competitors and reduces the constraints on Smith's market power.  As a result of this impairment, Smith has an enhanced ability to raise prices and limit choice or quality to consumers.  This impairment of Smith's competitors is sufficient to harm consumers in a way that is not a necessary outcome of the normal competitive process.

80.     Smith's enforcement and threat of enforcement of the '220 Patent against Fortune required Fortune to source its Fortune Rod Sharpener components from a different manufacturer at a higher price in an effort to avoid infringement allegations.  This change in manufacturer resulted in an increase in the cost of purchasing the components.  In addition, Fortune has been improperly restricted from competing in the Relevant Market which has resulted in lost sales directly related thereto.  As a result, Fortune's injury-in-fact amounts to significant and continuing monetary damage.

81.     Smith's suit for infringement based on the '220 Patent, and subsequent amendment of its complaint removing infringement claims based on the '220 Patent creates a reasonable apprehension that Fortune's Diamond Rod Sharpener and similar products are likely to be subject again to a lawsuit based on the fraudulently obtained patent.

82.    Smith's anti-competitive actions based on the fraudulently obtained '220 Patent constitute a violation of the Sherman Act, 15 U.S.C. § 1, et seq., thereby rendering Smith liable for treble damages, legal costs, prejudgment interest, and attorney's fees.

## DEMAND FOR JURY TRIAL

83.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Fortune hereby demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Fortune respectfully requests this Court enter:

1.    Judgment declaring that Fortune's 4-in-1 Sharpener and Diamond Rod Sharpener have not and do not infringe any purported patent rights of Defendant in the '199 or '220 Patents;

2.    Judgment declaring that all claims of the '220 Patent are invalid;

3.    Judgment awarding Fortune all profits on its lost sales, as well as other damages, as a result of Smith's violation of the Sherman Act;

4.    Judgment awarding Fortune treble damages under the antitrust laws;

5.    Judgment awarding Fortune attorney's fees and costs under the Declaratory Judgment Act and the antitrust laws;

6.    Judgment awarding Fortune interest in costs incurred in this action; and

7.    Judgment awarding to Fortune any such other relief as this Court may deem just and proper.

Respectfully submitted,

Kennedy Little & Burns PLLC

By: _____

Neal A. Kennedy
Texas Bar No. 11295100
Anne B. Little
Texas Bar No. 02521700
100 Avenue H, Suite 103
Marble Falls, Texas 78654
Phone: (830) 798-8311
Fax: (830) 693-4455

ATTORNEYS FOR FORTUNE PRODUCTS, INC.